1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

COLUMBUS BINGHAM IV,

                                    Plaintiff,

    v.

PADRES, L.P.,

                                    Defendant.

Case No. 25-cv-01199-BAS-DEB

**ORDER:**
   **(1) GRANTING PLAINTIFF'S MOTION TO REMAND TO STATE COURT (ECF No. 7); AND**

   **(2) DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION (ECF No. 4)**

21

22

23

24

25

        Presently before the Court are Plaintiff Columbus Bingham IV's ("Plaintiff") motion to remand the action to state court (ECF No. 7) and Defendant Padres, L.P.'s ("Defendant") motion to compel arbitration (ECF No. 4).  For the reasons below, the Court **GRANTS** Plaintiff's motion to remand the action to state court (ECF No. 7), and **DENIES** Defendant's motion to compel arbitration (ECF No. 4).

26

**I.    BACKGROUND**

27

28

        Plaintiff is an aggrieved employee of Defendant, and is a member of a worker's union who entered into collective bargaining agreements with Defendant on Plaintiff's

1   behalf.  Plaintiff has worked for Defendant from approximately July 2023 through at least

2   February of 2024.  (ECF No. 1-5 ¶ 43.)  In 2023, Plaintiff's union representative signed an

3   agreement to extend (ECF No. 1-2) a collective bargaining agreement originally covering

4   the period of March 1, 2018 through February 28, 2022 (ECF No. 1-4 ("2023-2024

5   CBA").) with Defendant until an effective term goes into effect pursuant to a new collective

6   bargaining agreement.  (*See* ECF No. 1-6.)  On January 30, 2024, Plaintiff's union

7   representative then signed a new collective bargaining agreement with the effective term

8   of March 1, 2024 through February 28, 2028.  (*See* ECF No. 1-8 ("2024-2025 CBA").)

9   Together, the Court refers to these agreements as "the CBAs."

10          On January 17, 2025, Plaintiff filed a complaint against Defendant in San Diego

11  Superior Court, alleging a cause of action for the violation of numerous provisions within

12  the California Labor Code Private Attorneys General Act of 2004 ("Labor Code"), Cal.

13  Lab. Code § 2698 et seq.  (ECF Nos. 1 ¶ 1, 1-5.)  Defendant removed the case to federal

14  court, on the basis that Plaintiff's causes of action required interpretation of a collective

15  bargaining agreement pursuant to Section 301 of the federal Labor Management Relations

16  Act ("LMRA § 301"), 29 U.S.C. § 185(a).  (ECF No. 1 ¶ 8.)  Plaintiff then filed a motion

17  to remand this action to state court on the basis that Plaintiff's claims do not require

18  interpretation of the CBAs at issue in this action, and so, the Court does not have

19  jurisdiction under LMRA § 301.  (ECF No. 7.)  Defendant has also filed a motion to compel

20  arbitration.  (ECF No. 4.)

21          Because the Court must first find that it has jurisdiction before it can reach the merits,

22  *see Rivera v. R.R. Ret. Bd.*, 262 F.3d 1005, 1008 (9th Cir. 2001), the Court will decide

23  Plaintiff's motion to remand before turning to Defendant's motion to compel arbitration.

24  **III.    MOTION TO REMAND TO STATE COURT (ECF No. 7)**

25          **A.    Legal Standard**

26          A defendant may remove a civil action from state court to federal court.  28 U.S.C.

27  § 1441(a).  "The removal statute is strictly construed against removal jurisdiction, and the

28  burden of establishing federal jurisdiction falls to the party invoking the statute."  *Acad. of*

*Country Music v. Cont'l Cas. Co.*, 991 F.3d 1059, 1061 (9th Cir. 2021) (citation omitted). "[A]ny doubt about the right of removal requires resolution in favor of remand." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009). Removal is proper when the federal courts have original jurisdiction over the state court action. 28 U.S.C. § 1441(a). District courts have original jurisdiction over "all civil actions that arise under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331; *see also Republican Party of Guam v. Gutierrez*, 277 F.3d 1086, 1088–89 (9th Cir. 2002) ("A case 'arises under' federal law either where federal law creates the cause of action or where the vindication of a right under state law necessarily turn[s] on some construction of federal law"). "A motion to remand is the proper procedure for challenging removal." *Moore-Thomas*, 553 F.3d at 1244.

On a motion to remand, this Court must resolve all disputed questions of fact and any ambiguities of law in favor of the non-removing party. *Rader v. Sun Life Assur. Co. of Canada*, 941 F. Supp. 2d 1191, 1194 (N.D. Cal. 2013) (citing *Good v. Prudential Ins. Co. of Am.*, 5 F. Supp. 2d 804, 807 (N.D. Cal. 1998)); *see also Hunter v. Phillip Morris USA*, 582 F.3d 1039, 1046 (9th Cir. 2009) ("[I]f there is a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court."). Concretely, the Court must resolve legal and factual questions in favor of Plaintiff, as the non-removing party.

**B.    Timeliness of Removal**

"A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)." 28 U.S.C. § 1447(c). "[A] timely objection to a late petition will defeat removal." *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1212 (9th Cir. 1980). Plaintiff served Defendant with its complaint on April 9, 2025. (ECF No. 1 ¶ 3.) Defendant filed a notice of removal thirty days on May 9, 2025, to remove the San Diego Superior

1  Court action to this Court.  (*Id*.)  Thus, as an initial matter, the Court finds Defendant timely

2  removed the case from state court to federal court.

3  **C.      Whether Dispute Arises Under Federal Law**

4  To determine whether an action arises under federal law, a court applies the "'well-

5  pleaded complaint rule.'" *Toumajian v. Frailey*, 135 F.3d 648, 653 (9th Cir.1998) (quoting

6  *Metro. Life. Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987)).  Under this rule, a claim arises

7  under federal law "only when a federal question is presented on the face of the plaintiff's

8  properly pleaded complaint." *Valles v. Ivy Hill Corp*., 410 F.3d 1071, 1075 (9th Cir. 2005).

9  "A resulting corollary to the well-pleaded complaint rule, known as the complete

10  preemption doctrine, provides that 'Congress may so completely preempt a particular area

11  that any civil complaint raising this select group of claims is necessarily federal in

12  character.'" *Toumajian*, 135 F.3d at 653 (quoting *Metro. Life*, 481 U.S. at 63–64).  "[I]f a

13  federal cause of action completely preempts a state cause of action[,] any complaint that

14  comes within the scope of the federal cause of action necessarily 'arises under' federal

15  law." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 24 (1983).

16  In this action, Defendant asserts the Court has federal question jurisdiction via

17  LMRA § 301 over Plaintiff's claims in this action.  (ECF No. 12.)  The Court must,

18  therefore, consider whether LMRA § 301 preempts the claims in this dispute.

19  Determining whether LMRA § 301 preempts a particular claim requires two steps.

20  *Burnside v. Kiewit Pac. Corp*., 491 F.3d 1053, 1059–60 (9th Cir. 2007).  LMRA

21  preemption cases first require inquiry into whether asserted cause of action involves a right

22  conferred upon employee by virtue of state law, not by collective bargaining agreement

23  ("CBA"), and if a right exists solely as result of CBA, then claim is preempted and analysis

24  ends ("*Burnside* step one").  *Id*.  Claims are not preempted under *Burnside* step one "if they

25  just refer to a CBA-defined right, rely in part on a CBA's terms of employment, run parallel

26  to a CBA violation, or invite use of the CBA as a defense." *Alaska Airlines Inc. v. Schurke*,

27  898 F.3d 904, 921 (9th Cir. 2018) (en banc).  If the claim "arises entirely from a right or

28  duty of the CBA ... it is, in effect, a CBA dispute in state law garb, and is preempted." *Id*.

at 921. The collective bargaining agreement must be the "'only source' of the right the plaintiff seeks to vindicate." *Id*. (quoting *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 258 (1994)). Thus, a claim that "involves a right conferred upon an employee by virtue of state law" is not preempted at *Burnside* step one.  *Burnside*, 491 F.3d at 1059.

If the right at issue does not arise entirely from a collective bargaining agreement, we proceed to "*Burnside* step two" and ask "whether litigating the state law claim nonetheless requires interpretation of a CBA, such that resolving the entire claim in court threatens the proper role of grievance and arbitration." *Alaska Airlines*, 898 F.3d at 921. Claims are only preempted at step two "to the extent there is an active dispute over 'the meaning of contract terms.' " *Id.* (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994)). Therefore, "[a] hypothetical connection between the claim and the terms of the CBA is not enough to preempt the claim ... [n]or is it enough that resolving the state law claim requires a court to refer to the CBA and apply its plain or undisputed language." *Id.* at 921–22.  If a plaintiff's claim is preempted under either prong of the *Burnside* test, plaintiff's claims can then proceed in federal court.

Here, Parties specifically dispute whether Defendant has violated the following Labor Code provisions: Labor Code §§ 222, 223, 204, 510, 512, 514, 246, 2802, 1197, 432.3. (*See* ECF Nos. 12, 14, 26, 27.)  The Court first assesses these claims, then considers whether Plaintiffs' remaining claims should be dismissed.

### 1.    Labor Code §§ 222, 223 – Lowered Wages

Plaintiff alleges the Padres violated Labor Code §§ 222, 223 ("§§ 222, 223")—which provide that it is unlawful to secretly pay a lower wage while purporting to pay the wage designated by contract and for time worked overtime.  (*See* ECF No. 1 ¶ 18 (summarizing ECF No. 1-5 ¶¶ 1, 6, 15, 16, 18–20, 24).)  Section 223 provides that where any "contract requires an employer to maintain the designated wage scale, it shall be unlawful to secretly pay a lower wage while purporting to pay the wage designated . . . by contract." Defendant asserts that Plaintiff's alleged rights to not be paid lower than the wage specified in Parties' CBA and to be paid for overtime work is conferred by the terms of the CBA itself, rather

than §§ 222, 223. (ECF No. 12 at 10:19–11:2 ("[T]he CBAs are contracts which require [Defendant] to pay specified wages to the aggrieved employees")).

Defendant argues that §§ 222, 223 are preempted under *Burnside* step one—since those provisions relate to the breach of contractual terms not exclusively provided by §§ 222, 223. Supporting Defendants' allegations, some courts within the Ninth Circuit have held that claims under Labor Code §§ 222, 223 are categorically preempted by LMRA § 301 as breach of collective bargaining agreement claims. *See e.g.*, *Cornn v. United Parcel Serv., Inc.*, No. C03-2001 TEH, 2004 WL 2271585, at *1 (N.D. Cal. Oct. 5, 2004)(plaintiff's claims under §§ 222 and 223 were preempted because the state created a remedy that was made expressly dependent on the agreement of the parties); *Navarro v. Servisair, LLC*, No. C 08-02716 MHP, 2008 WL 3842984, at *4 (N.D. Cal. Aug. 14, 2008)("Allegations of breach of any of these with respect to the provision of health benefits and wages related to the same converts this cause of action [for Section 223] into a claim for the breach of the CBA"). These courts support Defendants' arguments.

Other courts within the Ninth Circuit have held the contrary. *See e.g.*, *Rose v. Cemex Constr. Materials Pac., LLC*, No. 2:23-CV-01979 WBS AC, 2024 WL 307790, at *3 (E.D. Cal. Jan. 26, 2024) ("Like California Labor Code §§ 222–23, the state statute at issue in *Schurke* expressly relied upon the terms established by CBAs. . . The Ninth Circuit nonetheless concluded that the claim at issue arose directly from state law at [*Burnside*] step one because the plaintiff alleged a violation of a 'state law right,' not the CBA itself"); *Sarmiento v. Sealy, Inc.*, 367 F. Supp. 3d 1131, 1143–44 (N.D. Cal. 2019) (collecting cases and concluding that claims arising under California Labor Code sections 222 and 223 are not preempted).

As in *Rose* and *Sarmiento*, Plaintiff here asserts cause of action under Labor Code §§ 222, 223—not under the CBA exclusively. *Rose*, 2024 WL 307790, at *3; *Sarmiento*, 367 F. Supp. 3d at 1143–44. True, the protections conferred by § 222 specifically require a wage agreement arrived at through collective bargaining, and § 223 applies here only because the CBA is a contract that requires an employer to maintain the designated wage

scale. However, "[t]he fact that statutory provisions are contingent upon some predicate right conferred by the CBA is not dispositive [of *Burnside* step one]." *Sarmiento*, 367 F. Supp. 3d at 1144 (N.D. Cal. 2019); *see also Schurke*, 898 F.3d at 921.  Moreover, as discussed, the Court must resolve any ambiguities in law in favor of Plaintiff as the non-removing party. *Hunter*, 582 F.3d at 1046 (9th Cir. 2009).  Given the ambiguity in legal precedent discussed above, Plaintiff's Labor Code §§ 222, 223 claims arise directly from state law and are not preempted by § 301 under *Burnside* step one.

Regarding *Burnside* step two, Defendant alleges that Plaintiff's §§ 222, 223 claims are dependent upon the analysis of terms defined by the CBA—requiring the Court to analyze CBA terms including "work time" (2024-2025 CBA § 4.1(c)); "ordered to report for work" (*id.* § 4.2); "full pay" (*id.* § 4.2(c)); and "reasonable advance notice" (*id.* § 4.4(b)).  (ECF No. 12 at 11:12–16.)  However, as in *Renteria-Hinojosa*, Defendant "fails to identify any interpretive dispute about a CBA term that must be resolved to determine the regular rate of pay or any other element of [Plaintiff]'s overtime pay claims." *Renteria-Hinojosa v. Sunsweet Growers, Inc.*, 150 F.4th 1076, 1090 (9th Cir. 2025) ("*Renteria* III").  Indeed, "the mere need to 'look to' the collective-bargaining agreement for damages computation is no reason to hold the state-law claim defeated by § 301." *Livadas*, 512 U.S. at 125.  Thus, Plaintiffs' §§ 222, 223 claims are also not preempted by *Burnside* step two.

### 2.    Labor Code § 204 – Pay Timeliness

Plaintiff alleges Defendant violated Labor Code § 204 ("§ 204")—specifically § 204(a)—by not paying Plaintiff twice per month wages. (ECF No. 1-5 ¶ 30.)  Section 204(a) provides wages "are due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays" and specifies the calendar dates for these payments.  Defendant contests that Plaintiff's § 204 claim arises from the CBA instead because § 204(c) provides "when employees are covered by a [CBA] that provides different pay arrangements, those arrangements shall apply to the covered employees."

1  Because the CBAs provide for a semi-monthly payment structure, as provided for in

2  § 204(a) (2023-2024 CBA § 4.1(c); 2024-2025 CBA § 4.1(c)), Plaintiff's right to timely

3  wages under § 204(a) is not displaced by § 204(c)—and arises from state law rather than

4  the CBA.   Thus, the Court finds that the right to timely wages under § 204(a) is not

5  preempted by the CBA under the first prong of the *Burnside* test.  *Cf Renteria-Hinjosa v.*

6  *Sunsweet Growers, Inc.*, No. 2:23-CV-01413-DJC-DB, 2023 WL 6519308, at *4 (E.D.

7  Cal. Oct. 5, 2023), *aff'd sub nom. Renteria III*, 150 F.4th 1076 (finding plaintiff's "right to

8  timely payment of wages exists solely as a result of the bargaining agreements" because

9  such agreements "provide for different pay arrangements [than those in § 204(a)], namely,

10  weekly as opposed to semi-monthly payments").

11  Next, as Defendant points out, it is true that courts held § 204(c) can displace §

12  204(a) claims and preempt § 204 claims when the disputed contracts explicitly provide for

13  different payment structures from those in § 204(a).  (*See* ECF No. 12 at 12:19–13:2 (citing

14  *Johnson v. San Francisco Health Care & Rehab Inc.*, No. 22-CV-01982-JSC, 2022 WL

15  2789809, at *8 (N.D. Cal. July 15, 2022) and *Rodriguez v. USF Reddaway Inc.*, No. 2:22-

16  CV-00210- TLN-DB, 2022 WL 18012518, at *5 (E.D. Cal. Dec. 30, 2022).)  However,

17  silence as to exact pay days in the CBAs is distinct from explicit contradictions with those

18  in § 204(a).  *Cf Pro. Sols. Ins. Co. v. Grove La Mesa, Inc.*, No. 22-CV-1322-GPC-WVG,

19  2023 WL 3963821, at *7 (S.D. Cal. June 12, 2023) (quoting *AIU Insurance Co. v. Superior*

20  *Court*, 51 Cal. 3d 807, 821 (1990)) ("Absent contradictory meaning or usage given by the

21  contracting parties, [t]he 'clear and explicit' meaning of [contract] provisions, interpreted

22  in their 'ordinary and popular sense,' ... controls judicial interpretation.").

23  For the reasons above, the Court finds Plaintiff's § 204 is not preempted under either

24  *Burnside* step one (whether CBA solely provides for Plaintiff's § 204 claim) or two

25  (whether Plaintiff's § 204 claim requires interpretation of the CBA).

26  **3.     Labor Code § 510 – Overtime Compensation**

27

28

- 8 -

Plaintiff alleges Defendant violated Labor Code § 510 ("§ 510") based on Defendant's practice of "providing total compensation that is less than the required legal overtime compensation for the overtime worked." (ECF No. 1-5 ¶ 15.)

Section 510 provides that the "requirements of this section do not apply to the payment of overtime compensation to an employee working pursuant to ... [a]n alternative workweek schedule adopted pursuant to a collective bargaining agreement pursuant to Section 514." Cal. Lab. Code § 510(a)(2). Section 514 of the Labor Code ("§ 514") states that:

> Sections 510 and 511 do not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage.

In sum, "[b]y its terms, therefore ... section 510 does not apply to an employee who is subject to a qualifying CBA [under Section 514]." *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1153-54 (9th Cir. 2019). As explained by the Ninth Circuit in *Curtis*, if the applicable CBA "meet[s] the requirements of section 514, [if the employee's] right to overtime exists solely as a result of the CBA, and, therefore is preempted under § 301." *Id.* at 1154.

Defendant alleges that the CBAs meets all requirements of § 514, since it "expressly provides for wages. . .hours of work. . .working conditions of employees. . . premium wage rates for overtime. . . and an hourly rate of pay of not less than 30 percent more than the state minimum wage." Plaintiff counters that the "CBAs [attached to Defendant's removal papers] fail to set forth 130% of the minimum wage for most of the employees covered thereby." (ECF No. 14 at 11–12.)

The Court finds that the CBAs provide for wages, hours of work, working conditions of the employees, and overtime premium pay rates. (ECF Nos. 1-4 § 4, 1-8 § 4.) However,

25cv1199

the CBAs do not provide a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage, as required by § 514.

(*See* 2023-2024 CBA at 18):

**SCHEDULE A**
**WAGE RATES 2018 – 2022**

Effective March 1st of each year:

| Represented Employees | 2018 | 2019 | 2020 | 2021 |
|---|---|---|---|---|
| Captain | $17.02 | $17.27 | $17.52 | $17.82 |
| Ticket Seller | $17.63 | $17.73 | $17.88 | $18.03 |
| Apprentice Ticket Seller | $16.22 | $16.32 | $16.47 | $16.62 |
| Premium Seat Host | $15.30 | $15.55 | $15.80 | $16.10 |
| Apprentice Premium Seat Host | $14.45 | $14.70 | $14.95 | $15.25 |
| Guest Service Representative | $15.10 | $15.35 | $15.60 | $15.90 |
| Apprentice Guest Service Rep. | $14.25 | $14.50 | $14.75 | $15.05 |

(*See* 2024-2025 CBA at 34):

**SCHEDULE A**
**WAGE RATES 2024 – Feb 2028**

Effective March 1st of each year:

*2024 RATES WILL BECOME EFFECTIVE ON JANUARY 1, 2024. ALL SUBSEQUENT YEAR'S RATES WILL BECOME EFFECTIVE ON MARCH 1ST OF THAT YEAR.

| Represented Employees | 2024 | 2025 | 2026 | 2027 |
|---|---|---|---|---|
| Captain | $22.00 | $22.88 | $23.80 | $24.75 |
| Ticket Seller | $20.50 | $21.32 | $22.17 | $23.06 |
| Premium Seat Host | $20.00 | $20.80 | $21.63 | $22.50 |
| Guest Service Representative | $20.00 | $20.80 | $21.63 | $22.50 |

*All apprentice positions will make $2.00 less per hour than the respective regular rate listed above.

As Plaintiff alleges, minimum wage was $20.15 in 2023, $20.80 in 2024, and $21.45 in 2025.  (ECF Nos. 7 at 10:26–11:9, 7-1.)  As demonstrated in the CBAs' wage rates displayed above, almost every covered employee earned less than 130% of the minimum wage except for a single category of employees ("Captain") in 2024 and 2025.  Thus, the Court finds that Plaintiff's claim for failure to pay overtime pursuant to § 510 is not preempted.

### 4.    Labor Code § 512 – Meal Periods

Plaintiff also alleges Defendant violated Labor Code § 512 ("§ 512") for failure to provide statutorily mandated meal periods (ECF No. 1-5 ¶ 18.)  *See* § 512(a) (providing when, per hours worked, an employee must have an uninterrupted 30-minute meal period).  Similar to § 514, § 512(e)(2) provides conditions for a valid collective bargaining agreement that exempt the meal period requirements in § 512(a).  § 512(e)(2) states the following requirements for valid collective bargaining agreements:

> The valid collective bargaining agreement expressly provides for the wages, hours of work, and working conditions of employees, and expressly provides for meal periods for those employees, final and binding arbitration of disputes concerning application of its meal period provisions, premium wage rates for all overtime hours worked, and a regular hourly rate of pay of not less than 30 percent more than the state minimum wage rate.

*See also Garcia v. Pac. Gas & Elec. Co.,* No. 24-CV-04150-VC, 2024 WL 4209519, at *1 (N.D. Cal. Sept. 17, 2024) ("Employees are exempt from Section 512(a) if their CBA provides for meal periods, final and binding arbitration of disputes concerning its meal period provisions, wages, hours of work, working conditions, premium wages for overtime, and a regular hourly rate of pay over 30% of the minimum wage.").

Notably, similar to § 514, § 512(e)(2) requires that the CBAs provide a regular pay rate of over 30% of the minimum wage.  As discussed in the previous section, neither the 2023-2024 CBA nor the 2024-2025 CBA do so.  Thus, the Court finds that Plaintiff's claim for failure to pay overtime pursuant to § 512 is not preempted under *Burnside* step one.  And, as with the term "overtime," Parties do not dispute that the meaning of the term "meal

- 11 -

1  period" is subject to interpretation pursuant to § 512 —so, it is not preempted under
2  *Burnside* step two.

3          **5.**     **Labor Code § 246 – Sick Days**

4          Plaintiff alleges Defendant failed to pay adequate sick leave in violation of Labor
5  Code § 246 ("§ 246"). (ECF No. 1-5 ¶ 28.) Section 246.5(a) requires an employer to
6  provide paid sick days for the "[d]iagnosis, care, or treatment of an existing health
7  condition of, or preventative care for, an employee or an employee's family member[.]"
8  Similar to §§ 512(e)(2) and 514, § 245.5(a)(1) functions as an "opt-out mechanism" that
9  allows employers and employees to opt out of the requirements of Section 246.5(a) by
10  agreeing to certain heightened employment standards in their collective bargaining
11  agreement. *McCray v. Marriott Hotel Servs., Inc.*, 902 F.3d 1005, 1011 (9th Cir. 2018).
12  Section 245.5(a)(1) states that § 246.5(a)'s sick day requirements do not apply to:

> [a]n employee covered by a valid collective bargaining agreement if the
> agreement expressly provides for the wages, hours of work, and working
> conditions of employees, and expressly provides for paid sick days or a paid
> leave or paid time off policy that permits the use of sick days for those
> employees, final and binding arbitration of disputes concerning the
> application of its paid sick days provisions, premium wage rates for all
> overtime hours worked, and regular hourly rate of pay of not less than 30
> percent more than the state minimum wage rate.

        Notably, similar to §§ 514 and § 512(e)(2), § 245.5(a)(1) requires that the CBA
provides a regular pay rate of over 30% of the minimum wage. As discussed previously,
neither the 2023-2024 CBA nor the 2024-2025 CBA do so. Thus, the Court finds that
Plaintiff's claim for failure to pay overtime pursuant to § 246 is not preempted under
*Burnside* step one. And, as with the terms "overtime" and "meal period," Parties do not
dispute that the meaning of the term "minimum wage" is subject to interpretation pursuant
to § 512 —so, it is also not preempted under *Burnside* step two.

        **6.**     **Labor Code § 2802 – Reimbursable Business Expenses**

25cv1199

1  Plaintiff asserts a claim to recover reimbursable business expenses pursuant to Labor

2  Code § 2802 ("§ 2802") for costs incurred for the following (ECF No. 1-5 ¶ 26):

3              driving personal vehicles (i.e., mileage and gas), purchasing

4              uniforms, providing uniform and other deposits, separately
               laundering mandatory uniforms. for the purchase of tools and

5              safety equipment, and for the purchase and maintenance of cellular
               phones and cellular phone plans, for pre-employment medical,

6              physical or drivers' exams taken as a condition of employment.

7  Parties agree that Plaintiff's claim under § 2802 for reimbursable business expenses

8  is not preempted under *Burnside* step one—meaning it arises from state law. (*See* ECF

9  No. 26 at 6, n.1.)  Thus, the Court considers whether Plaintiff's claim is preempted under

10 *Burnside* step two.  Plaintiff points out that his § 2802 claim does not require interpretation

11 of the CBAs, since "Plaintiff's pleadings specifically allege the categories of work-related

12 expenses that Defendant failed to reimburse, including mileage, gas, uniforms, and tools."

13 (ECF No. 27.)

14 Defendant contests, nonetheless, that Plaintiff's claim under § 2802 is preempted

15 because it requires the Court to analyze the CBAs for what qualifies as reimbursable

16 business expenses.  More specifically, Defendant alleges that Plaintiff's § 2802 claim

17 cannot be resolved without addressing Defendant's alleged failure to comply with the CBA

18 provision covering reimbursement for employees' uniforms and parking costs.  (ECF No.

19 12 at 20:14–21:2.)

20 But that simply isn't the case.  To adjudicate Plaintiffs' Cal. Labor Code § 2802

21 claim, the Court must determine only that: "(1) the employee made expenditures or

22 incurred losses; (2) the expenditures or losses were incurred in direct consequence of the

23 employee's discharge of his or her duties, or obedience to the directions of the employer;

24 and (3) the expenditures or losses were reasonable and necessary." *Arroyo v. Int'l Paper*

25 *Co.*, 611 F. Supp. 3d 824, 844–45 (N.D. Cal. 2020) (citation omitted).

26 "The fact that a Court may need to consider whether [Plaintiff's purchases—

27 including of uniforms and parking passes—]are necessary to performance of the

28

- 13 -

employees' jobs both to show a § 2802 violation and to establish a breach of the CBA is of no moment." *Amaya v. Menzies Aviation (USA), Inc.*, 705 F. Supp. 3d 1067, 1076 (C.D. Cal. 2023).  The United States Supreme Court in *Lingle* explained that although the state law analysis might involve attention to the same factual considerations as the contractual determination, such parallelism does not render the state law analysis *dependent upon* the contractual analysis. As long as the state law claim can be resolved without interpreting the collective-bargaining agreement itself, the claim is "independent" of the agreement for § 301 preemption purposes. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413 n.12 (1988).

In other words, whether Defendant violated the CBAs is an inquiry separate and distinct from whether it violated § 2802.  Plaintiff's theory is not that Defendant failed to reimburse Plaintiff for "mileage, gas, uniforms, and tools" in violation of the CBA.  Rather, Plaintiff alleges Defendant failed to reimburse Plaintiff for the "cost of using their personal cell phones for work purposes."  *Amaya v. Menzies Aviation (USA), Inc.*, 705 F. Supp. 3d 1067, 1077 (C.D. Cal. 2023).  Thus, no interpretation of the CBA is necessary, and Plaintiff's § 2802 claim is also not preempted under *Burnside* step two.

### 7.    Labor Code § 1197 – Minimum Wage

Plaintiff's minimum wage claim under Labor Code § 1197 cannot be dismissed as preempted because employees cannot waive their right to a minimum wage through a CBA. *See Garcia v. Pac. Gas & Elec. Co.,* No. 24-CV-04150-VC, 2024 WL 4209519, at *1 (N.D. Cal. Sept. 17, 2024) (finding the same) (citing *Huerta v. CSI Electrical Contractors*, 15 Cal. 5th 908, 933 (Cal. 2024)).

### 8.    Labor Code § 432.3 – Unlawful Hiring

Plaintiff alleges Defendant violated Labor Code § 432.3 ("§ 432.3") by relying on the salary history of an applicant as a factor in determining whether to offer employment to an applicant (ECF No. 1-5 ¶ 40.)  Section 432.3 prohibits an employer from "seek[ing] salary history information ... about an applicant" or "rely[ing] on the salary history information of an applicant ... as a factor in determining whether to offer employment ...

- 14 -

25cv1199

or what salary to offer an applicant." Cal. Labor Code § 432.3(a)–(b).   Again, Parties do not dispute that Plaintiff's claim under § 432.3 for using salary history as an indicator in hiring arises from state law and is not preempted under *Burnside* step one.

Defendant argues that Plaintiff's claim is preempted under *Burnside* step two, since the CBAs vaguely reference Defendant's discretion to hire employees (ECF Nos. 1-4 § 7, 1-8 § 7 ("employer retains" the "sole and exclusive right to hire … subject to the standard of just cause…")).   Again, Plaintiff's claim under § 432.3 is not that Defendant considered salary history in its hiring decision in violation of the CBAs, or even that the CBAs are invalid per violating § 432.3.   Rather, Plaintiff claims that Defendant's act of considering salary history in making a hiring decision violated § 432.3—which does not require any interpretation of the CBAs.   Here, too, whether Defendant violated the CBAs is an inquiry separate and distinct from whether it violated § 432.3.   Since Plaintiff's § 432.3 claim "can be resolved without referencing the CBA," it is also not preempted under *Burnside* step two.  *Hererra v. Perez,* No. CV 12-1101 CAS AGRX, 2012 WL 1044302, at *3 (C.D. Cal. Mar. 27, 2012); *see also Lingle*, 486 U.S. at 413 n.12.

### 9.    Remaining Claims

Parties do not dispute that Plaintiff's remaining claims arise under state law, rather than federal law.   The Court cannot hear state law claims in federal court without one or more related federal causes of action to anchor the state law claims. *See* Title 28 U.S.C. § 1367 (providing that a district court may exercise supplemental jurisdiction over state claims when they are "so related" to the federal claims "that they form part of the same case or controversy under Article III of the United States Constitution."); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).   Since the Court has found that Plaintiff's causes of action discussed above arise under state, rather than federal law under LMRA § 301, it finds there are no claims in this action that involve federal law.

* * *

For the reasons above, the Court **GRANTS** Plaintiff's motion to remand the action to state court.  (ECF No. 7.)

1    **IV.    MOTION TO COMPEL ARBITRATION (ECF No. 4)**

2        Because the Court has resolved the jurisdictional question above and determined that

3    it lacks jurisdiction over this case, the Court does not address the motion to compel

4    arbitration (ECF No. 4). *See Nguyen v. SMTC Mfg. Corp. of California*, No. 24-CV-07394-

5    JST, 2025 WL 2238033, at *7 (N.D. Cal. Aug. 6, 2025).

6    **V.    CONCLUSION**

7        For the reasons discussed, the Court **GRANTS** Plaintiff's motion to remand the

8    action to state court (ECF No. 7), and **VACATES AS MOOT** Defendant's motion to

9    compel arbitration (ECF No. 4).

10        **IT IS SO ORDERED.**

11

12    **DATED: November 21, 2025**

13        **Hon. Cynthia Bashant, Chief Judge**
         **United States District Court**

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

25cv1199